## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROLYN CASEY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | 14-2671 |
| UNITEK GLOBAL SERVICES, INC., | : | |
| et. al, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

**Stengel, J.**                                                    **February 9, 2015**

Carloyn Casey brings this sex discrimination and equal pay act claim against her former employers Unitek Global Services, Inc. and Unitek USA LLC [collectively, "Unitek" or "defendants"]. Unitek has filed a motion for protective order claiming that Ms. Casey was employed as an attorney, and she should be prohibited from using any privileged communications. Unitek also requests that I quash the subpoena served on Marc Gilbert. I will deny both motions.

## I.      Background

Upon earning her Juris Doctor from Widener University in 1993, Ms. Casey pursued a career in insurance claims management. She worked in a hospital claims department, two insurance brokerages, and a human resources firm where she designed a workers compensation program. In 2011, Unitek hired Ms. Casey as its Director of Risk management. Unitek promoted Ms. Casey to Vice President of Safety and Risk in January 2012. During the course of her employment, Ms. Casey complained to her

1

superiors that she was being paid less than her male colleagues and that she was being sexually harassed. On January 24, 2013, Ms. Casey emailed a written complaint regarding the repeated sexual harassment by Marc Gilbert. Within minutes of sending her complaint, Ms. Casey was terminated.

Ms. Casey filed this Title VII and Equal Pay Act case on May 9, 2014. I conducted a Rule 16 conference with all counsel on August 15, 2014. Early settlement of the claims seemed possible. Nonetheless, discovery efforts quickly deteriorated, and on September 11, 2014, Unitek filed a motion for a temporary restraining order. Unitek claims that plaintiff was its attorney and that she was using attorney-client communications to prosecute her claims. Following a telephone conference with all counsel, I denied the temporary restraining order, and I directed counsel to file this motion for a protective order instead. I also stayed discovery until I resolved whether any attorney-client privilege applied. Unitek has also filed a motion to quash a subpoena on Marc Gilbert. Unitek filed several exhibits with each motion which it requests to file under seal.

On November 24, 2014, I stayed these proceedings due to the defendants' bankruptcy filing. On January 16, 2015, defendant's filed a notice of effective date of confirmed bankruptcy plan which terminated the bankruptcy stay. These motions are now ripe for disposition.

II.     **Discussion**

    **a.  Motion for Protective Order**

Unitek moves for a protective order on three grounds. First, Unitek asserts that Ms. Casey was employed as an attorney and should be prohibited from using confidential attorney-client communications to prosecute her case. Second, Unitek argues that a confidentiality agreement prohibits Ms. Casey's use of information she learned during her employment. Finally, Unitek maintains that Ms. Casey's discovery requests are overbroad and unduly burdensome. I find that Unitek has not shown good cause for the issuance of a protective order, and I will deny its motion.

A motion for a protective order is a proper method for challenging inappropriate discovery requests. Federal Rule of Civil Procedure 26(c) provides that, upon a motion by a party from whom discovery is sought and for good cause shown, the court may enter a protective order preventing discovery on certain matters. A party "show[s] good cause by demonstrating a particular need for protection." Cipollone v. Liggett Grp., Inc., 785 F.2d 1108, 1121 (3d Cir. 1986). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," are insufficient to show good cause. Id. (citations omitted).

    **1.  Attorney-Client Privilege**

A party may demonstrate good cause for the issuance of a protective order by establishing that the sought after discovery is protected by attorney-client privilege. *See*, Pearson, 211 at 65; Fid. & Deposit Co. of Maryland v. McCulloch, 168 F.R.D. 516, 522 (E.D. Pa. 1996). The privilege "applies to any communication that satisfies the following

3

elements: it must be (1) a communication (2) made between the client and the attorney or his agents (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." In re Processed Egg Products Antitrust Litig., 278 F.R.D. 112, 117 (E.D. Pa. 2011) (citing In re Teleglobe Commc'ns Corp., 493 F.3d 345, 359 (3d Cir.2007)). "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts…." Upjohn Co. v. United States, 449 U.S. 383, 395, 101 S. Ct. 677, 685, 66 L. Ed. 2d 584 (1981) (quoting Philadelphia v. Westinghouse Electric Corp., 205 F.Supp. 830, 831 (Pa. E.D. 1962)). While the privilege serves the important purpose of "encouraging full and frank communication between attorneys and their clients," Upjohn Co., 449 U.S. at 389, "the privilege obstructs the search for the truth … and must be strictly confined within the narrowest possible limits consistent with the logic of its principle." In re Grand Jury Investigation, 599 F.2d 1224, 1235 (3d Cir. 1979) (citations omitted). "The burden of proving that the (attorney-client) privilege applies is placed upon the party asserting the privilege." Matter of Grand Jury Empanelled Feb. 14, 1978, 603 F.2d 469, 474 (3d Cir. 1979) (citing United States v. Landof, 591 F.2d 36, 38 (9th Cir. 1978)).

Attorney Client Privilege does not support the issuance of a protective order in this case because Ms. Casey was not Unitek's attorney. An attorney-client relationship arises when a person manifests an intent that the lawyer provide legal services and the lawyer consents to do so. Restatement (Third) of Law Governing Law § 14 (2000). The client need not pay a retainer nor enter into a contract, but the client must enter into the relationship for the purpose of obtaining legal advice. See U.S. v. Costanzo, 625 F.2d

4

465, 468-69 (3d. Cir. 1980); <u>Martin Marietta Materials, Inc. v. Bedford Reinforced</u> <u>Plastics, Inc.</u>, 227 F.R.D. 382, 392 (W.D. Pa. 2005) ("Rather, the existence of the privilege depends upon the attempt by a party to secure some legal advice or to procure some legal services."); <u>Morisky v. Pub. Serv. Elec. & Gas Co. (""PSE&G")</u>, 191 F.R.D. 419, 424 (D.N.J. 2000) (citations omitted) ("[T]he professional relationship for purpose of the privilege for attorney-client communications 'hinges upon the client's belief that he is consulting a lawyer in that capacity'…."). These general principles also apply to determine if a corporation established a confidential relationship with an attorney, or as in this case, in house counsel. *See* <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 390 (1981) ("[T]his Court has assumed that the privilege applies when the client is a corporation.")

Unitek did not hire Ms. Casey to be its attorney. Rather, Unitek employed Ms. Casey as the Director of Risk Management and promoted her to Vice President of Risk and Safety. In these positions, Ms. Casey led the risk management and safety departments which were separate from and not reportable to Unitek's General Counsel. Neither position required Ms. Casey to have any legal knowledge, much less a juris doctor.[1] Instead, Ms. Casey was responsible for maintaining adequate insurance for Unitek and its subsidiaries, analyzing risk, reducing loss and managing litigation arising from insurable claims. Job Description, Director of Risk Management, Pl.'s Opp'n. to Mot. for

---

[1] Indeed, Unitek has since filled Ms. Casey's former positions with two non-attorneys. Pl.'s Resp. Ex. B and Ex. C.

5

Protective Order Ex. A1.[2] I believe the positions are best described as in-house insurance broker and claims adjuster.

It appears Ms. Casey was well qualified for her risk management position at Unitek. After earning her law degree from Widener University, Ms. Casey pursued a career in insurance claims management. She first worked at Mercy Health Corporation as a risk manager and claims coordinator. She then went on to work as a claims manager at two insurance brokerages, Hobbs Group, LLC and Porter & Curtis, LLC. Ms. Casey's final position before Unitek was at People 2.0 Global, Inc., where she designed a Worker's Compensation insurance and risk management program. She also earned her associate in claims, an insurance accreditation, in 2005. While her law degree may have been an asset to her insurance career, her professional background does not include the practice of law.

Given Ms. Casey's total lack of legal experience, it is simply not credible that Unitek hired Ms. Casey to be its attorney. Nonetheless, Unitek attaches numerous exhibits which it contends establish the existence of an attorney-client relationship. These exhibits fall into two categories. The first set shows that Ms. Casey managed the

---

[2] The job description for Director of Risk Management details the following duties: "Manages insurance programs such as fidelity, surety, liability, property and workers' compensation. Analyze and classify risks as to frequency and potential severity, and measures financial impact of risk on company. Selects appropriate techniques and implements programs and policies to minimize loss, such as avoidance, loss prevention and reduction, retention, grouping of exposure units, and transfer. Participates in insurance negotiations, section of insurance brokers and carriers, and placement of insurance. Prepares operational and risk reports for management analysis. Manages policy renewals, claims, issuance of certificates, budget planning, risk minimization programs, and prevention programs. Plans, directs and coordinates risk and insurance programs to minimize risks and control losses. Leads the investigation of accidents and injuries and cooperates in the preparation of material and evidence for organization use in hearings, lawsuits and insurance investigations. Oversees the administration of worker's compensation program, including working with the insurance carrier to reduce employee lost time. Communicates with field offices to administer policies and procedures regarding accident reporting and worker's compensation. Monitors damages complaints aand conducts internal audits. Manages in-house handling of damages that exceed a specific threshold. Ensures all filed offices are in compliance with OSHA postings and other required postings.

litigation of insurable claims filed against Unitek. In this role, Ms. Casey received court notices from Unitek's registered agent, Corporation Service Company. She retained outside counsel to represent Unitek in the litigation. She communicated with counsel to verify pleadings, make discovery responses and grant settlement authority. The second group of exhibits evidences that Ms. Casey and other Unitek Executives attended quarterly litigation update meetings. At the quarterly meetings, Ms. Casey received confidential communications from outside counsel regarding the status of all employment based claims.

Ms. Casey's management of insured claims in litigation does not establish an attorney-client relationship. While Ms. Casey's performance of this function may make her position look quasi-legal, the cases were not assigned to her office because she was an attorney. Rather, she took charge of these claims because the insurance policies which she negotiated and oversaw would indemnify Unitek for any loss. Accordingly, Ms. Casey was in the best position at Unitek to communicate with the insurers regarding the conduct of litigation and to discuss appropriate settlement authority. After consulting with the insurers and Unitek executives, she communicated the company's position to outside counsel who she retained to represent Unitek. In doing so, Ms. Casey was acting as a client to outside counsel. She was not acting as Unitek's attorney. There can be no doubt that Ms. Casey's legal training assisted her greatly in this aspect of her position, but Unitek points to no evidence that it sought Ms. Casey's legal advice or opinion with regard to any of the insurable claims.

Ms. Casey's presence at quarterly litigation meetings does not suggest that she was Unitek's attorney. At the litigation meetings, Colin Dougherty, who is also defense counsel in this matter, updated Unitek executives on the status of litigation involving Unitek and its affiliated companies. Decl. of Daniel Yannantuono, Def. Mot. for Protective Order, Ex. 4, Doc. No. 20-5, ¶ 6. There is no evidence that Ms. Casey's presence at the meetings was for the purpose of securing her legal advice. That appears to have been Mr. Dougherty's role. Rather, Ms. Casey participated along with other Unitek executives to make strategic business decisions regarding the litigation. Ms. Casey was not acting as Unitek's attorney merely because she was present at the meeting. *See* Kramer v. Raymond Corp., 90-CV-5026, 1992 WL 122856, at *1 (E.D. Pa. May 29, 1992) (citing Super Tire Engineering Co. v. Bandag, Inc., 562 F.Supp. 439, 441 (E.D.Pa.1983)) ("Business communications are not protected merely because they are directed to an attorney, and communications at meetings attended or directed by attorneys are not automatically privileged as a result of the attorney's presence.").

Even if Ms. Casey was in-house counsel, Unitek has not identified any specific privileged communications which merit protection. In-house counsel play a dual role of legal advisor and business advisor. *Eg*. Faloney v. Wachovia Bank, N.A., 254 F.R.D. 204, 209 (E.D. Pa. 2008) (citing Kramer v. Raymond Corp., 1992 WL 122856, at *1 (E.D.Pa. May 29, 1992). When a corporation claims privilege over communication with in-house counsel, they "must clearly demonstrate that the communication in question was made for the express purpose of securing legal not business advice." AAMCO Transmissions, Inc. v. Marino, 88-CV-5522, 1991 WL 193502, at *3 (E.D. Pa. Sept. 24,

1991) (citing <u>Teltron, Inc. v. Alexander</u>, 132 F.R.D. 394, 396 (E.D.Pa.1990); <u>Avianca, Inc. v. Corriea</u>, 705 F.Supp. 666, 676 (D.D.C.1989)); *See also* <u>Leonen v. Johns-Manville</u>, 135 F.R.D. 94, 99 (D.N.J. 1990) *(citing* <u>First Chicago International v. United Exchange Company, Ltd</u>., 125 F.R.D. 55, 57 (S.D.N.Y.1989)) ("To prevent corporate attorneys from abusing the privilege by using it as a shield to thwart discovery, the claimant must demonstrate that the communication would not have been made but for the client's need for legal advice or services."). Thus, even if Unitek could prove that Ms. Casey was in-house counsel, which it has not, Unitek must also establish that the communication was made to Ms. Casey in her role as legal advisor.

The only specific discovery requests to which Unitek objects on privilege grounds relate to "alleged incidents" involving Jeff Winterbottom and Jim Dellinger. According to Ms. Casey's affidavit, Jeff Winterbottom, the Vice President of Operations, sent pornographic images to a female subordinate by email. Unitek terminated the female subordinate but did not terminate Mr. Winterbottom. Jim Dellinger, another employee, exposed himself to a female colleague and placed his penis on her desk. Unitek summarily concludes that Ms. Casey learned about these incidents through attorney-client communication,[3] but Unitek fails to identify any specific communication deserving protection. Ms. Casey responds that she learned about these incidents from several co-workers – none of whom were seeking legal advice.

---

[3] "Plaintiff's knowledge and awareness of such 'alleged incidents' … could have only been based upon confidential and privileged information, knowledge, and communications plaintiff received during her employment with UGS." Defs.' Mot. for Protective Order 8.

Since Unitek has not identified any specific communication, I am unable to determine if Ms. Casey learned of the Winterbottom and Dellinger incidents through privileged communications. Rather, it is more likely that any communications regarding Winterbottom's and Dellinger's behavior was made to Ms. Casey in casual conversation and is not protected. Costanzo, 625 F.2d at 468 (citing Diversified Industries, Inc. v. Meredith, 572 F.2d 596, 602 (8th Cir. 1977)) ("[A] communication is not privileged simply because it is made by or to a person who happens to be a lawyer…."). Due to the scandalous nature of the incidents, I imagine that Winterbottom and Dellinger have been the subject of much office gossip and will be for decades to come. There are any number of ways that Ms. Casey could have learned about the incidents, and Unitek's failure to identify any confidential communications prevents me from issuing an order protecting the same. In any event, the privilege would only protect the communication, not discovery of the facts surrounding the Winterbottm and Dellinger incidents. Upjohn Co., 449 U.S. at 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.").

Otherwise, Unitek totally fails to identify any relevant communication with Ms. Casey which is protected by attorney-client privilege. Unitek's best effort is a compilation of 11 emails sent to or received from Ms. Casey.[4] Defs. Mot. for Protective

---

[4] Ms. Casey worked at Unitek for nearly two years. According to Unitek, she sent or received approximately 100,000 emails. Defs,' Mot. for Protective Order 34. Yet, defendants can only identify ten emails in which Ms. Casey was asked for or provided a legal opinion, impressions, recommendatinos and conclusions. This is a very poor showing for a motion premised on attorney client privilege.

order Ex. 28. These documents arguably show that Ms. Casey, on occasion, provided her

legal opinion to Unitek. However, none of the emails even remotely bear on any

probative fact at issue in this case.[5] While Unitek could seek to withhold these documents

on the basis of privilege, I doubt that their protection will greatly hamper Ms. Casey's

discovery efforts.[6]

      Also in the context of attorney-client privlege, Unitek seeks an order forbidding

plaintiff from prosecuting this action based upon information she obtained during her

employment. The Pennsylvania Rules of Professional Conduct, which have been adopted

by this court, Local R. Civ. P. 83.6 IV.B, prohibit an attorney from revealing any

information related to the representation of a client. PA ST RPC 1.6. Similar to attorney-

client communications involving in-house counsel, Rule 1.6 only applies to information

that an in-house attorney learned in her capacity as legal advisor. *See* Kachmar v.

SunGard Data Sys., Inc., 109 F.3d 173, 181 (3d Cir. 1997) (noting what information in-

---

[5] 1.) August 4, 2011 email: Ms. Casey receives a premises liability claim at one of defendants leased properties. Ms. Casey notifies the insurer, and forwards the report to general counsel for response. 2.) September 22, 2011 email: Ms. Casey receives notices of a $450 fine from Virginia for violation of the Underground Utility Act. She notes that the fine is not insurable. 3.) September 23, 2011 email: Sending a court opinion to Elizabeth Downey explaining that a proposed employee selection program is not discriminatory. 4.) October 21, 2011 email: Ms. Casey receives an email from one of the staff attorneys asking for advice on how to respond contract dispute regarding damaged coax cables. 5.) Email dated November 4, 2011: Ms Casey forwarded an email she received from outside counsel to Unitek Executives. In the email, outside counsel reports on the outcome of the mediation of a personal injury claim. The claim was covered by insurance. 6.) Email dated December 29, 2011: Ms. Casey sent an email to General Counsel in which she interprets the language of an insurance policy. 7.) Email dated January 12, 2012: A customer complained that her dog got out of her house due to the negligence of one of Unitek's employee's. Ms. Casey sent an email to three Unitek executives to determine who should respond and how. 8.) Email dated March 22, 2012: Ms. Case sent an email to Unitek executives regarding the mediation of a personal injury claim. 9.) Email dated July 16, 2012: Ms. Casey sent an email to Unitek executives detailing a litigation plan for a personal injury claim. 10.) Email dated September 30, 2012: Ms. Casey sent an email to Unitek Executives to determine whether to settle a personal injury claim or to take the case to trial. 11.) Email dated January 8, 2013: Ms. Casey received an email from outside counsel regarding a cross-claim in a suit brought against DirectTV for trespass.

[6] I do not decide whether these emails are privileged. Rather, if defendants believe these emails are actually responsive to any of plaintiff's discovery requests, they should withhold the emails and cite the reasons for doing so in a privilege log. If plaintiff disputes the withholding of the document, they shall first attempt to resolve the dispute with defense counsel. Plaintiffs may then seek an order compelling the documents if a good faith effort to resolve the dispute fails.

house counsel may learn outside of her representation). In <u>Kachmar</u>, defendant employer moved to dismiss a Title VII case brought by its former in-house counsel citing Rule 1.6. The Court of Appeals was not persuaded finding, "It is premature at this stage of the litigation to determine the range of the evidence Kachmar will offer and whether or how it will implicate the attorney-client privilege." <u>Id</u>. In other words, Unitek cannot claim that Ms. Casey was its attorney and prohibit her from using any facts she learned during her employment. Rather, Unitek must raise specific objections clearly explaining how the information relates to Ms. Casey's alleged legal representation.

Unitek points to correspondence from plaintiff's counsel as evidence that Ms. Casey seeks to reveal information related to her employment at Unitek. As a Unitek executive, Ms. Casey attended quarterly litigation meetings at which time all executives received a written report from Mr. Dougherty regarding the status of litigation involving Unitek. These reports were labeled, "***Attorney-Client Communications*** Confidential and Privileged." Defs.' Mot. for Protective Order Ex. 25. Ms. Casey affirms that she took these reports home with her as was the usual and accepted practice. Pl.'s Resp. Ex. A ¶ 23. Ms. Casey handed these documents over to her counsel who, upon seeing that they were privileged, returned the documents to Mr. Dougherty. Mr. Dougherty interprets this as a threat to air confidential information to "coerce a windfall settlement from a publicly traded company." Defs.' Mot. for Protective Order 1. This is absurd. In the letter enclosing the privileged documents, plaintiff's counsel states, "We have not read these documents, and neither Ms. Casey nor our firm has retained any

copies of them." Id. Ex. 9.[7] Counsel's return of the litigation reports does not suggest that

Ms. Casey intends to violate the Rules of Professional Conduct. Defendants'

protestations to the contrary are ridiculous.

### 2. Confidentiality Agreement

In the alternative, Unitek contends that Ms. Casey's use of confidential

information is a breach of her confidentiality agreement, but the confidentiality

agreement has not been implicated. Pursuant to the terms, Ms. Casey agreed not to

publish or disclose any of Unitek's confidential information. Intellectual Property,

Confidentiality, Non-Competition and Non-Solicitation Agreement, Def. Mot. for

Protective Order, Ex. 16 ¶ 1. However, confidential information is not defined so broadly

as to encompass all information which Ms. Casey learned during her employment.

Rather, the definition is narrowly tailored to protect Unitek's intellectual property and

trade secrets.[8] Unitek has offered no evidence that Ms. Casey has disclosed any

---

[7] The full text of the letter reads:

> We are sending documents to you under cover of this letter. The documents have fox Rothschild or UniTek Global Services headers and are stamped on the bottom: "***Attorney-Client Communications*** Confidential And Privileged". We note that there are five of them; for of them bear stamps in the left-hand corner (LNI 1415560v1 01/08/13, LNI 1415560v1 01/08/13, LNI 1339957v1 07/03/12, LNI 1309039v1 04/13/12) and the on without such stamp bears a date of January 11, 2011. We have not read these documents and neither Ms. Casey nor our firm has retained any copies of them.
>
> Please call me if you would like to discuss this matter further. Thank you for your courtesy and cooperation.

[8] "The term 'Confidential Information' includes all information of any nature and in any form which at the time or times concerned is not generally known to the public, other than by act or acts of any person not authorized by the Company to disclose such information, and which relates to any one or more of the aspects of the present and past business or finances of the Company or any of its predecessors, including, but not limited to, patents and patent applications, inventions and improvements whether patentable or not, development projects, policies, processes, formulas, techniques, know-how, technical information, and other facts relating to products, services, sales, advertising, promotions, financial matters, vendors, customers, customer lists, customer purchases or requirements, licenses or trade secrets, including, without limitation, all unpublished information and all information and data

13

proprietary information. It is hard to imagine why Ms. Casey would need to use any such information to prosecute this employment discrimination matter. She is not in violation of the confidentiality agreement.

### 3. Overbroad and Unduly Burdensome Discovery

Finally, defendants move for a protective order to limit, "Plaintiff's overbroad, onerous, unduly burdensome, harassing, grossly oppressive, abusive, improper, and irrelevant written discovery requests…." Defs.' Mot. for Protective Order 26.[9] "No motion or other application pursuant to the Federal Rules of Civil Procedure governing discovery… shall be made unless it contains a certification of counsel that the parties, after reasonable effort, are unable to resolve the dispute." Local Rule of Civil Procedure 26.1(f). It is not possible that defendants attempted to resolve their dispute as to the scope of discovery, because I stayed discovery until I determined whether attorney-client privilege applied. Plaintiff confirms that defendants did not attempt to work out their differences. I will not consider defendants' objections as to the scope of discovery until after the parties confer in good faith.

### 4. Motion to file Documents under Seal

Unitek seeks to seal exhibits 17 through 32 claiming that the documents are protected by attorney-client privilege. A motion to place documents under seal is similar to a motion for a protective order. In considering the motion, I am mindful of the

---

which is not generally available to the industry." Intellectual Property, Confidentiality, Non-Competition and Non-Solicitation Agreement, Def. Mot. for Protective Order, Ex. 16 ¶ 1.

[9] Like the motion as a whole, counsel's litany of adjectives is unnecessarily verbose. In the future, counsel shall abide by my chamber's procedures limiting memoranda and briefs to 25 pages.

presumption that documents filed in judicial proceedings should be open for public inspection. Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1070-71 (3d Cir. 1984) (citing Nixon v. Warner Communications, Inc., 435 U.S. 589, 598 (1978)). This presumption attaches to materials filed in support of a pretrial motion such as the exhibits at issue here. Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 998 F.2d 157, 164 (3d Cir. 1993) "To overcome the presumption, the party seeking the protective order must show good cause…." Cipollone v. Liggett Grp., Inc., 785 F.2d 1108, 1121 (3d Cir. 1986). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." Publicker Indus., Inc., 733 F.2d at 1071.

I must balance these public and private interests when considering Unitek's motion to seal. Though not an exhaustive list, the Court of Appeals has recommended that the following factors to be included in my evaluation:

1) whether disclosure will violate any privacy interests;

2) whether the information is being sought for a legitimate purpose or for an improper purpose;

3) whether disclosure of the information will cause a party embarrassment;

4) whether confidentiality is being sought over information important to public health and safety;

5) whether the sharing of information among litigants will promote fairness and efficiency;

6) whether a party benefitting from the order of confidentiality is a public entity or official; and

7) whether the case involves issues important to the public.

Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995) (citing Pansy v. Borough of Stroudsburg, 23 F.3d 772, (3d Cir. 1994). "If [the matter] involves issues or parties of a public nature, and involves matters of legitimate public concern, that should be a factor weighing against entering or maintaining an order of confidentiality. Pansy, 23 F.3d at 788 (citations omitted). "On the other hand, if a case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality." Id.

Private and public interests strongly support the preservation of confidential attorney-client communications. The purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co., 449 U.S. at 389. "Failure to maintain such information under seal will cause 'a clearly defined and serious injury' not only to the parties seeking closure but also to the public interest which the attorney-client privilege is designed to serve." Dombrowski v. Bell Atl. Corp., 128 F. Supp. 2d 216, 219 (E.D. Pa. 2000) (quoting Pansy, 23 F.3d at 786). The Third Circuit has warned district courts to use caution before disclosing privileged document which have been filed under seal. See Haines v. Liggett Grp. Inc., 975 F.2d 81, 97 (3d Cir. 1992) ("Because of the sensitivity surrounding the attorney-client privilege, care must be taken that, following any determination that an exception applies, the matters covered by the exception be kept under seal or appropriate court-imposed privacy procedures until all avenues of appeal are exhausted."); but see Glenmede Trust Co., 56 F.3d at 485 (noting that the rule of Haines is not steadfast).

16

While the privileged character of some of the exhibits would support Unitek's position, I cannot ignore the manner in which the documents were used. Mine Safety Appliances Co. v. N. River Ins. Co., 09-CV-348, 2014 WL 1320150, at *16 (W.D. Pa. Mar. 31, 2014) ("Plaintiff's invocation of the attorney client and work product privileges as support for use of this court's authority to seal must be evaluated in accordance with the context in which it arises."). Courts generally agree that the attorney-client privilege cannot be used as both a sword and a shield. See United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991); Merisant Co. v. McNeil Nutritionals, LLC, 242 F.R.D. 303, 311 (E.D. Pa. 2007) (citing Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 222 (3d Cir.2006)). "A party should not be permitted to use the privilege to shield information which it has deliberately chosen to use offensively." Tracinda Corp. v. DaimlerChrysler AG, 362 F. Supp. 2d 487, 513 (D. Del. 2005). Here, Unitek used attorney-client communications as a complete defense to Ms. Casey's lawsuit. Had their motion been successful, Ms. Casey would have been prevented from obtaining any discovery to prove her case. Unitek's offensive use of attorney-client communications constitutes a waiver of the privilege. Todd v. S. Jersey Hosp. Sys., 152 F.R.D. 676, 687 (D.N.J. 1993) ("documents to which a party claims protection from discovery based upon the attorney-client privilege, cannot thereafter be used in the furtherance of that party's defense without that party waiving the privilege."). Therefore, I will deny defendant's motion to file documents under seal.

Unitek also moves to seal exhibits 13 through 16 which are taken from Ms. Casey's personnel file. Ms. Casey concurs in this request. Personnel files may contain

sensitive personal information which should be impounded. <u>Vearling v. Bensalem Twp.</u>
<u>Sch. Dist.</u>, 94-CV-7711, 1996 WL 119984, at *1 (E.D. Pa. Mar. 18, 1996). However, a
typical personnel file may contain material which is not sensitive and does not warrant
such protection. <u>Id</u>. Therefore, a party seeking to seal a personnel file must still identify
the particular item which will "cause a clearly defined injury which is sufficiently serious
to justify imposing a secrecy requirement." <u>Id</u>. (citing <u>Pansy</u>, 23 F.3d at 786); s*ee also*
<u>Catullo v. Liberty Mut. Grp., Inc.</u>, 09-CV-3359, 2012 WL 762163, at *9 (D.N.J. Mar. 6,
2012) *vacated on other grounds* 510 F. App'x 178 (3d Cir. 2013). Ms. Casey contends
that her home address, her social security number and her driver's license number should
be redacted from the exhibits. I agree, and I would add Ms. Casey's phone numbers and
email address to the list. Exhibits 13 through 16 will remain under seal. The parties shall
file redacted copies of the exhibits as directed in the accompanying order.

### B.  Motion to Quash Marc Gilbert Subpoena

Unitek moves to quash the subpoena on Marc Gilbert claiming that the subpoena
seeks documents protected by attorney-client privilege and Mr. Gilbert's confidentiality
agreement with Unitek. Ms. Casey alleges that she was terminated after filing a written
complaint about Mr. Gilbert's sexual harassment. I may quash a subpoena when the
movant shows that the subpoena, 1.) fails to allow a reasonable time to comply; 2.)
requires a non-party to travel more than 100 miles; 3.) requires the disclosure of
privileged or other protected matter; or 4.) subjects a person to undue burden. Fed. R.
Civ. P. 45(c)(3). As a party claiming a personal right or privilege with respect to the
subject matter of the subpoenas, Unitek has standing to seek to quash them. *See* <u>City of</u>

St. Petersburg v. Total Containment, Inc., 06-cv-20953, 2008 WL 1995298, at *1 n. 1

(E.D. Pa. May 5, 2008). Unitek bears a heavy burden of proving the subpoena requests

privileged information. *See* Id. * 2 ("It is movant's burden to establish the requirements

of Rule 45 as the party seeking to quash the subpoenas.")

Unitek has not established that the subpoena requests privileged information.

Unitek fails to identify a single document in Mr. Gilbert's possession which is protected

by attorney-client privilege. Broad and unsubstantiated conjecture about the possible

existence of attorney-client communications is insufficient to meet Unitek's burden on

this motion to quash. Furthermore, Unitek's reliance on the confidentiality agreement is

misplaced. This is the same confidentiality agreement at issue in the motion for protective

order. As I have already discussed, the confidentiality agreement was specifically

addressed to intellectual property and trade secrets. Considering that Unitek provides

engineering, design and maintenance services in the telecommunications industry, I

highly doubt that Mr. Gilbert, who was employed as an auto liability specialist, had

access to any of Unitek's intellectual property or trade secrets. If he did, I fail to see how

Ms. Casey's subpoena requests any proprietary information.[10]

Unitek has attached portions of Mr. Gilbert's personnel file as exhibits to this

motion. As with the motion for protective order, Unitek moves to file these exhibits under

---

[10] The subpoena requests Mr. Gilbert to produce: "1.) All documents related to your employment with UniTek Global Services Inc. and/or UniTek USA LLC; 2.) All documents related to the termination of your employment with UniTek Global Services, Inc. and/or UniTek USA LLC; 3.) All documents related to any claim you submitted for unemployment compensation in connection with the termination of your employment with UniTek Global Services, Inc. and/or UniTek USA LLC; 4.) All communications you have had with or received from any employee agent or representative of UniTek Global Services, Inc. and/or UniTek USA LLC that relates to or in any way references Carolyn Casey; 5.) All communication you have had with or received from Carolyn Casey."

seal. However, Unitek does not identify any sensitive information which requires protection. *See* <u>Vearling</u>, 1996 WL 119984, at *1 (citing <u>Pansy</u>, 23 F.3d at 786). The exhibits do not include Mr. Gilbert's address, social security number or other personal identifiers which should be redacted. Accordingly, I will deny Unitek's motion to file the exhibits under seal.

## III.   Conclusion

For the foregoing reasons, I will deny defendants' motion for a protective order and motion to quash subpoena. Defendants may not file exhibits under seal, but defendants must redact Ms. Casey' personal information from exhibits 13 through 16.